The next case this morning is 520-0400, People v. Ezebuiroh. Arguing for the appellant, Jerry Ezebuiroh is Gavin Dow. Arguing for the appellate, People of the State of Illinois, is Lynn Harrington. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, councillors. Good morning. If we are ready to proceed, which I assume we are, Mr. Dow, feel free to begin. Thank you, Your Honor. Good morning, and may it please the court. I'd like to begin by addressing the second of the three issues that we have raised in this appeal, which was the trial court's error in allowing the state to introduce evidence that Mr. Ezebuiroh was an aggressive detainee. That evidence was not relevant to any proper purpose. It showed only that Mr. Ezebuiroh had a propensity to engage in aggressive behavior. Under Rule 404, whether you consider that to be character evidence or prior bad acts evidence, that kind of evidence cannot be used for the purpose of showing that on this particular occasion, the defendant acted in conformity with that character or with his prior actions. The state is arguing that this evidence was because it goes to intent or an absence of mistake. In other words, Mr. Ezebuiroh's state of mind. But the only way that you can get there is by making an improper propensity inference. You know, essentially, the theory is either Mr. Ezebuiroh was aggressive or he has behaved aggressively in the past. Therefore, he is more likely to have been behaving aggressively during the charged incident, in which case it would be intentional, deliberate, or knowing conduct. That textbook propensity inference. That is specifically what the rules prohibit, and this evidence should never have been admitted. Now, that was harmless error because the state actually used it for that improper purpose. The key issue at trial was Mr. Ezebuiroh's state of mind. Did he know he was going to cause insulting and provoking contact, or as he testified, he was simply trying to stop some pain that arose unexpectedly during the procedure. During its rebuttal, the state argued that the jury should reject Mr. Ezebuiroh's testimony because, quote, he was an aggressive person who, quote, tried to wreak havoc on a correctional officer. Given that we had, you know, a plausible account by Mr. Ezebuiroh, the state of mind, given that the state asked the jury to not believe his testimony because of his aggressive character, the state cannot show that this error was not harmless. So, at the very least, we would be asking this court to reverse and remand for a new trial on that basis. Mr. Dow, we're not talking about something that happened a prior conviction or years ago. You're talking about just minutes before the actual alleged crime, aren't you? I believe that is the basis upon which they had determined that he was an aggressive prisoner, Your Honor. The state actually moved to exclude that previous incident from the evidence, and the defense ultimately agreed with that. So, neither party was trying to get in this incident that occurred, I believe, about 30 minutes before the charged incident. Wasn't not he in a special kind of cell that had where he had to put his hands out to have him cuffed? Was that an aggressive, some kind of special cell on account of his condition? Your Honor, I don't know if it was a special cell. The sense I got was that it's actually just a regular holding cell, but the procedure that they used of uncuffing him through the chuck hole as opposed to in person, that was done on account of the jail's determination that he was an aggressive prisoner. Right. Obviously, that procedure is relevant. The jury needs to know that they're following a procedure to do this, just like they have to know he's in jail. You can't present this case without explaining that. But just like you wouldn't, and in fact, why he was in the jail, there was no need to elicit the reason why they were using this particular procedure on that occasion. All that mattered was that this is how they were doing it, and there was no contention that the jail or the officer was doing anything improper. Okay. With my remaining time, I'd like to briefly discuss the state's motion to cite Dennis Tate, which argues essentially that there's no speedy trial violation because Mr. Azzaburro on the defense failed to make an adequate objection and demand for trial at the continuances on March 31 and May 21, 2020. The court has a response, and obviously, our position is that this new argument should not be considered because it's been forfeited twice. But even if this court does reach the argument, I want to emphasize the two reasons why it should reject the notion that Mr. Azzaburro was required to take some kind of affirmative action in response to these continuances. And that's because for those two reasons, the general requirement in speedy trial statute of that kind of objection and demand does not apply in this case. First, both of these continuances were entered under administrative orders that specifically provided they would not be charged to the defense. In other words, everybody, the court, the prosecution, the defense, everybody understood that this was not something the defendant was agreeing to. Everybody understood this was not something that would be charged to the defense. And under that circumstance, there's no reason at that point to make a formal demand for trial because the purpose of making that demand is to establish that the defendant doesn't agree with this. And since the order already established that, it was baked into the trial court's action, there wasn't any need to, you know, do something else. That was good enough. But the other reason that Mr. Azzaburro was not required to raise an objection in this case is unlike in Dennis Tate, neither Mr. Azzaburro nor his attorney were in court for either one of these continuances. That means they did not have the opportunity to make timely objections. The continuances were entered. No one was there to stand up and say, Your Honor, we object. Your Honor, we demand trial. And the defense only received notice of them afterwards. So under that circumstance, deeming Mr. Azzaburro to have agreed to continuances that were entered in his absence, it would not make sense and it would not be fair. Now, as far as the merits of this BD trial case go, I'm happy to talk about them. But that issue is pending in the Illinois Supreme Court in People v. Mayfield. And we absolutely expect the court to decide that issue. So unless the court has questions about it, I would rest on my briefs. I was just going to ask the panel if they had any further questions. Finish your statement, Mr. Dow. I think you'll find that my statement at this point is not terribly interesting, because my next point is simply that I'm also going to rest on the briefs for the third issue, unless the court would like to talk about it. No questions. All right. In that case, we would ask this court to reverse and either discharge Mr. Azzaburro due to this BD trial violation or else demand for a new trial. Thank you. All right. Thank you, Mr. Dow. You'll have time to rebuttal. Ms. Harrington. Good morning, Your Honors. Counsel, may it please the court, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honors, I'd first like to respond to opposing counsel's comment about People v. Tate, if I may. People v. Tate is incredibly relevant to this case. In fact, it's almost the identical case as was in People v. Tate. First, with regard to counsel's comment about forfeiture, this issue can't be forfeited because People v. Tate came out after the briefs in this case were filed. In fact, I actually argued People v. Tate and wrote briefs in that case. In that case, I argued, as I argued here, that there was no speedy trial violation, but Justice Cates brought up a very good point, that looking at the record, that the defense counsel failed to comply with the Speedy Trial Act. That's exactly what happened here as well. With regard to counsel saying that defendant or defense counsel was not present at those court calls, if you take a look at the record, and I think it's Common Law Record, pages 82 and 83, there's proof that the clerk, first of all, the clerk was ordered to notify the parties of what happened at those court calls, and there's proof in the record that the clerk actually did so. Now, on the second one, I think it was in May, there is something in the record that says it was returned on delivered to sender from the prison, but the proof did, I'm sorry, the notice did go through to the state's attorney's office, the prosecutor, and the defense counsel. So, there was nothing hampering the defense counsel here from properly complying with the Speedy Trial Act and putting in a written demand and saying, we disagree, and here's why, and complying with all of its elements. And with regard to counsel's argument that they did not have to comply with the Speedy Trial Act because these Supreme Court orders were in place, the people submit that the defense is making the state's argument here, that the Speedy Trial Act was not, was being trumped by the Supreme Court order. And your honors, the reason why the Supreme Court orders trumped the Speedy Trial Act is put in our Constitution, our 1970 Constitution, in Article 6, Section 16. It specifically says that Illinois Supreme Court is vested with general administrative and supervisory authority over all courts. And then in 1997, in People v. Kunkel, the Supreme Court looked at that section and said that that power includes both the adjudication and application of law and the procedural administration of the courts, including rulemaking authority to regulate the trial of cases. That's exactly what happened here, your honors. This was an unprecedented worldwide pandemic, and the Supreme Court had to use its authority, its constitutionally appropriately given authority to suspend all jury trials to protect the lives of judges, of justices, of jurors, of bailiffs, of attorneys, of all the staff people involved. And that's why the Speedy Trial Act had to be suspended. So your honors, if this court decides to rule on the issue, as many other courts have, and saying that there's no separation of powers violation here, no speedy trial violation because of the Supreme Court orders, as the Second District has done in Mayfield, as the First District has recently done in Burton, as the Fourth District has done in Jones, and as this Mayfield, if the particular continuances were during the COVID period. Your honors can either decide that way, or you can decide on People v. Tate, because the case is almost identical. It's the same court calls. It's the same facts. It's everything, except for the fact that the defense was not present in court. But clearly, we know that counsel got notice. Counsel should have a written motion for a speedy trial. Counsel did not. Therefore, your honors, I'd like to move on to the second issue that counsel brought up, the motion in limine. The first thing I'd like to address is the standard of review here, your honors. The standard of review is abuse of discretion. And we all know what that means. We all know that it has to be arbitrary, fanciful. No other reasonable court would have made that decision in this motion in limine. And if you go back to the hearing on the motion, it's clear that the trial court asked defense, well, are you going to argue self-defense? And counsel says, no, we're going to argue that he didn't intentionally do it. You know, he didn't touch him. And if he did, it was an accident. Well, then the court says, okay, but the state has to prove intent. So we're going to allow in the evidence that he was an aggressive prisoner because that shows their intent. So propensity aside, rule 404B specifically says, if there's any other reason than propensity, then the evidence comes in. And the evidence was relevant as the state argued because of the fact that they needed to explain to the jury why this prisoner was in this particular cell. And I disagree with counsel this cell was just an ordinary cell. My recollection of the record is it was a specific segregated cell for aggressive prisoners. And that chuck hole was built into that cell for that reason. So the jury was entitled to know that information. The elements of the offense show that aggravated battery of a correctional officer. The first element is that the defendant knowingly made physical conduct of an insulting or provoking, I'm sorry, of an insulting or provoking offender, Kastner. Being labeled as an aggressive prisoner gave rise to a reasonable inference that when he attacked Kastner, defendant knew what he was doing. That wasn't a mistake. So for those reasons, Your Honor, for intent and absence of a mistake, the evidence that defendant was an aggressive prisoner was properly admitted into evidence. And even if you take out this evidence, Your Honor, of whether he was aggressive or not, we've got plenty of evidence to show beyond a reasonable doubt that the defendant was properly convicted of aggravated battery of a correctional officer. We've got CO Kastner's testimony. What did he say? He said, I told the prisoner, let go of me so I can uncuff you. He testified that the defendant dragged his arms through that chuck hole. He testified the defendant grabbed his hand that he was trying to use to grab the cuff key, and the defendant was trying to pry his hand open. The videos, which were properly brought into evidence, support CO Kastner's testimony. So you've got CO Kastner's testimony. You've got the video testimony. You've got the testimony of CO Kastner's supervisor who said, yes, I reviewed all these videotapes, and CO Kastner acted completely properly under the circumstances. So you've got all that versus the defendant's testimony. And what did he say? Well, it was really hard to understand what he said, to be honest with you. It was very confusing. He contradicted himself several times. First, he said that he didn't feel pain or he didn't pull back. Then he admitted that he did feel pain when he pulled back, but he never explained, well, why would you continue to pull back if you were feeling pain? Why wouldn't you just stand there and let the correctional officer uncuff you? So your honors, without any other evidence of him being an aggressive prisoner, the state properly proved the defendant guilty beyond a reasonable doubt. And for these reasons, your honor, the state would respectfully request that the defendant's conviction is affirmed. And I will stand on my brief also with regard to ineffective assistance, but I'm happy to answer any questions about that. The state also proved that defense counsel was not ineffective in using a strategic decision to not use a preemptory challenge on this responding. Thank you. Thank you, Ms. Harrington. Justice Welch, any questions? No questions. Justice Vaughn? No questions. All right. Thank you again. Mr. Dau, you have time in rebuttal. Thank you, your honor. Just starting with harmless air, which we were just talking about, the question, first of all, isn't whether or not there was sufficient evidence in the record besides the improper evidence to sustain a conviction. The question is whether the state can show that it was not harmless, that it didn't affect the jury's ultimate verdict. And it's got a very hard time making that showing when it used this evidence as a reason for the jury to reject Mr. Ezeberro's testimony. Now, about that testimony, it's certainly true that Officer Kasner's testimony was, by and large, consistent with the video, but so was my client's testimony. In fact, their testimony is, by and large, consistent with each other. The only significant disagreement that they had, I believe, is whether or not during the incident Mr. Ezeberro made skin-to-skin contact with Officer Kasner's left hand, which is the hand that he did not sustain any injuries to. Mr. Ezeberro said that he didn't. Officer Kasner said that he did. But ultimately, that's not what this turns on because the question isn't contact. You don't have to make skin-to-skin contact with someone to commit a battery. If you throw a baseball at someone's That's a battery even though you never touched. The question really is, what was Mr. Ezeberro's head during this incident? Why was he doing this thing? And the state's theory is he was doing it to because he was an aggressive guy. And he was doing it to cause insulting provoking contact. And Mr. Ezeberro's testimony in his defense was no. I experienced sudden and unexpected pain, and I was just trying to stop it. Now we can sit here and say maybe there's a different way that he could have acted that probably would have worked out better for everybody. And yeah, it probably would have. He endures a few more seconds of pain, the cuffing is done, and then it's over. People don't always make the best decisions though. And that doesn't make that decision a crime. It also doesn't make that decision an implausible thing to do. You know, if he makes a suboptimal decision about how to respond when handcuffs are suddenly and painfully being squeezed on him, that's only going to be a crime in this case. If what he's doing is insulting and provoking contact in response. He testified it wasn't, and the jury absolutely could have accepted that testimony. And it would have certainly been possible for the jury to do that had it not been exposed to the improper evidence. With respect to whether it was an error in the first place, the fact that you can concoct a theory of relevance that gets you to state of mind only matters if that theory of relevance doesn't involve propensity. For example, let's say instead of saying that Mr. Ezebro was an aggressive person, there was evidence that he and the officer involved here had gotten into a physical altercation on a previous occasion. That would be proper under the rules because it would show not that Mr. Ezebro was prone to get into altercations, but because it would show that he might have a grudge against the officer. That's how you properly use 404 evidence for purposes other than propensity. You cannot use this kind of evidence, character evidence or prior acts evidence, to draw propensity inference. That's what was improper here. I've got one minute left, so I'm going to briefly address Tate again. First, Tate doesn't rely on some kind of a new principle. The general rule about requiring a demand for trial is right there in the statute. There's no reason why the state couldn't have raised this in trial court or earlier in this appeal. Tate helps it, but it's not applying any brand new law. I would point out, though, that Tate did not consider our argument that the Fourth Circuit administrative order, not the Illinois Supreme Court's order specifically, but the Fourth Circuit orders under which these continuances were entered, those said that they would not be charged to the defendant. As far as I can tell, the court in Tate did not consider that. We would argue that that should lead to a different result here. Just one final point on the speedy trial, on the merits of it. It really boils down to, is it substantive or procedural? If it's procedural, like Mayfield held, the Illinois Supreme Court can suspend, amend, or repeal the speedy trial statute at will. Thank you. I see my time. Thank you, Justice Welch. Justice Vaughn, any questions? No questions. No questions. All right. Thank you both for your arguments today. The court will take the matter under consideration and issue its ruling in due course.